# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN L. MILLER, III,** | : |
| | : |
| | : **CIVIL ACTION** |
| **Plaintiff,** | : No. 2:20-cv-3054 |
| | : |
| v. | : |
| | : |
| **CITY OF PHILADELPHIA, et al.,** | : |
| | : |
| **Defendants** | : |
| | : |

## ORDER

AND NOW, this _____ day of _____, 2020, upon consideration of Defendants' Partial Motion to Dismiss, Plaintiff's Response in Opposition, and Defendants' Reply, and for good cause shown, it is **HEREBY ORDERED** that the Partial Motion to Dismiss is **GRANTED**. Plaintiff's claims are disposed of as follows:

- Count 1, withholding of evidence, is DISMISSED; the remainder of Count 1 goes forward to discovery;

- Count 2, fabrication of evidence, is DISMISSED in its entirety;

- Count 4, equal protection, is DISMISSED in its entirety; and

- Count 5 is DISMISSED to the extent that the claims against the City of Philadelphia arise out of the claims otherwise dismissed.

BY THE COURT:

_____
ANITA B. BRODY, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN L. MILLER, III, | : |
|                 Plaintiff, | : CIVIL ACTION |
| | : No. 2:20-cv-3054 |
| v. | : |
| CITY OF PHILADELPHIA, et al., | : |
|                 Defendants | : |

## DEFENDANTS CITY OF PHILADELPHIA, JEFFREY PIREE, WILLIAM COOGAN, RICHARD BOVA, JOHN BELL, and MICHAEL SHARKEY'S
## PARTIAL MOTION TO DISMISS

Defendants City of Philadelphia, Jeffrey Piree, William Coogan, Richard Bova, John Bell, and Michael Sharkey, by and through the undersigned counsel, hereby move to partially dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this motion, Defendants incorporate the attached memorandum of law. Defendants respectfully request that this Court partially dismiss, in whole or in part, Counts 1, 2, 4, and 5 of the Complaint.

Date: October 22, 2020

Respectfully submitted,

/s/ *Anne B. Taylor*
Anne B. Taylor
Chief Deputy City Solicitor
Pa. Attorney ID No. 206057
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
215-683-5381 (phone)
215-683-5397 (fax)
anne.taylor@phila.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN L. MILLER, III, | : |
| | : |
| Plaintiff, | : CIVIL ACTION |
| | : No. 2:20-cv-3054 |
| v. | : |
| | : |
| CITY OF PHILADELPHIA, et al., | : |
| | : |
| Defendants | : |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' <u>PARTIAL MOTION TO DISMISS</u>

Plaintiff John L. Miller, III has filed suit, contending that he served twenty-two years in prison for a murder he did not commit, and alleging that the reason for his conviction was unconstitutional actions by five Detectives employed by the Philadelphia Police Department. He seeks to hold five individuals, Detectives Jeffrey Piree, William Coogan, Richard Bova, John Bell, and Michael Sharkey, liable for withholding, suppressing, and/or concealing exculpatory evidence (Count 1); fabricating evidence (Count 2); malicious prosecution under federal and state law (Counts 3 and 6); and equal protection violations (Count 4). He also contends that the City of Philadelphia, through its policies and procedures, and/or its failure to adequately train these defendant detectives, is responsible for his alleged harms (Count 5). Defendants now move to dismiss several of Plaintiff's claims, some of which are unsupported by the allegations of the complaint and others of which are unsupported by the law.

## I. Factual and Procedural Background[1]

Anthony Mullen was shot and killed on October 8, 1996, while working as a guard at a parking lot near to Thirtieth Street Station. Compl. ¶¶ 23-24; *see also Miller v. District Attorney of Philadelphia*, No. 12-742, 2019 WL 2869641, at *1 (E.D. Pa. June 12, 2019). Police arrived on the scene after being called, and Detective William Coogan was assigned as lead on the homicide investigation, to be assisted by Detectives Richard Bova and John Bell. *Id.* ¶ 25.

In the absence of much forensic evidence or other leads, no progress was made on the homicide investigation. *Id.* ¶¶ 26-27. Months later, however, in late February 1997, an individual named David Williams told Detective Michael Sharkey that he had information about several murders that had been committed. *Id.* ¶¶ 31, 33. Williams provided Detective Sharkey this information with the intent that this information would minimize the consequences for the number of robberies he had performed and to which he confessed. *Id.* ¶¶ 28, 30, 32-33.

In speaking with Detective Sharkey, who did not work in the homicide division, Williams described how Plaintiff had confessed to the murder of Anthony Mullen, and that his fellow robber, Mark Manigualt, was present for that confession. Compl. ¶¶ 20, 34-35. Williams also relayed information about another murder, unrelated to Plaintiff. *Id.* ¶ 36. According to Williams, he had information about the second murder because his acquaintance, Jack Williams, had admitted to killing a man named Paul Jones at 56th and Beaumont in the summer of 1996. *See id.* Rather than write down Williams' statements, Detective Sharkey called Detective Jeffrey Piree, whose responsibilities included investigating leads in cold homicide cases, and told him

---

[1] The following recitation is taken from Plaintiff's Complaint and accepted as true for the limited purposes of this motion to dismiss for failure to state a claim. *Cudjoe v. Dep't of Veterans' Affairs*, 426 F.3d 241, 244 (3d Cir. 2005); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Defendants do not concede that all the allegations in the Complaint are supported by a factual basis, following a reasonable investigation.

that Williams and Manigualt had information about open homicide investigations. *Id.* ¶¶ 38-39. Detective Sharkey had no further substantive involvement with the case. *See generally* Compl.

On March 4, 1997, once at the Homicide Division headquarters, Williams was interviewed first about the Paul Jones murder by Detective McDermott. Compl. ¶¶ 41-42. David Williams stated that Jack Williams had confessed to the murder over the phone, while Jack Williams was incarcerated at the Philadelphia Prison System. *Id.* ¶ 43. Although Plaintiff does not allege that the defendant detectives searched for and could not find a recording of the reported call between David and Jack Williams, Plaintiff alleges that David Williams' statement was demonstrably false, because if a call had happened it would have been recorded by the Philadelphia Prison System. *Id.* ¶¶ 44-45. Plaintiff contends that at an unknown date, Detective Piree learned about David Williams' false statement attributing a murder confession to Jack Williams.[2]

Detective Piree recorded his interview with Williams by hand, creating a statement in which Williams relayed the information he learned from Plaintiff. Compl. ¶¶ 47-49. Notably, Williams stated that Plaintiff had told him, Williams, about Plaintiff's attempt to rob Mullen and, upon Mullen refusing to give any money, his shooting of Mullen. Williams further stated that Plaintiff's finger was injured during the robbery; that Plaintiff got his gun from a neighborhood teenager named Michael Arnold; and that he shot Mullen during the robbery and then got rid of the gun. *Id.* ¶ 49. Williams also shared that he spoke to Arnold, who had confirmed he loaned a gun to Plaintiff to use in a robbery. *Id.* ¶ 50. Although Directive Piree did not include this in the

---

[2] Jack Williams did, in fact, murder Paul Jones. *Commonwealth v. Jack Williams*, 2002 WL 34401582 (Ct. of Comm. Pls. Phila. Cnty., Jan. 30, 2002). Plaintiff's claim, however, appears to be that David Williams lied about whether or how he knew about this murder, and that the lie was discoverable and material.

3

written statement, Williams also stated that Manigault was present at the scene of the murder and could confirm Plaintiff had done it. *Id.* ¶ 51.

Detective Piree followed up on the Williams information about Manigault, interviewing Manigault on or around May 14, 1997. Compl. ¶¶ 53-54. Detective Piree confronted Manigault with Williams' statements, and Manigault responded that he had no information about the Mullen murder. *Id.* ¶¶ 55-56. Manigault elaborated that he was incarcerated at the Philadelphia Prison System when the Mullen murder occurred, a fact which, on an unidentified date, Detective Piree and "the other defendant detectives" confirmed by reference to Manigault's arrest history. *Id.* ¶¶ 57-58.

Plaintiff alleges that the information about Manigault's whereabouts establishes that Williams had provided false information to Detective Piree and Detective Sharkey. Compl. ¶ 59. Plaintiff further alleges that Detective Piree shared the fact that Williams had provided false information about (1) the method by which he learned about Jack Williams' murder of Paul Jones and (2) the placement of Manigault at the scene of the murder when he was in fact in custody to all of the other named defendants, Detectives Coogan, Bova, Bell, and Sharkey. *Id.* 65. No formal report reflecting this information was generated, but instead it was captured on informal activity sheets, sheets that were stored in the Homicide File. *Id.* ¶¶ 66-68. These activity sheets, and the information they contained, were not turned over to prosecutors. *Id.* ¶¶ 68-69.

Detectives Bova and Coogan went to the boarding school at which Michael Arnold was located to follow up on Williams' statement that Plaintiff had gotten the murder weapon from Arnold. Compl. ¶¶ 70-73. Plaintiff alleges that Arnold feared he could be prosecuted for

4

murder, so tried to give the detectives the information they wanted to hear and only signed the statement as a result of threats that he might be charged for the murder. *Id.* ¶ 74, 78.[3]

Detective Bell signed an affidavit of probable cause that included the information from the Williams and Arnold statements to show that probable cause existed to believe that Plaintiff had murdered Anthony Mullen. Compl. ¶¶ 79-80, 83. This affidavit did not include the following information applicable to the credibility of Williams and Arnold: (1) that Williams reported Manigault as an eyewitness when Manigault was actually in custody on the day of the crime; (2) that David Williams could not have heard about Jack Williams' murder of Paul Jones in the manner he claimed; and (3) that Arnold heard he could be considered responsible for the Mullen murder before providing information to Detectives Bova and Coogan. *Id.* ¶ 81. Plaintiff contends that had this information been included, charges never would have been approved. *Id.* ¶ 86.

At the preliminary hearing, David Williams testified that his statement to Detective Piree was false, and that Plaintiff had never confessed to the murder of Anthony Mullen. Compl. ¶ 90. Williams explained that he lied because he was angry at the Plaintiff. *Id.* ¶ 91. Detective Piree then described the process of taking Williams' statement, and the municipal court judge held Plaintiff for trial on all charges. *Id.* ¶¶ 92-93. Just as at the preliminary hearing, at trial Williams disavowed his initial statement. *Id.* ¶ 97. And just as at the preliminary hearing, Detective Piree

---

[3] Defendants note that Plaintiff's allegations in paragraphs 73-78 do not quite appear to conform to the March 18, 2012 certified affidavit provided by Mr. Arnold in support of Plaintiff's post-conviction litigation, in which Arnold stated "I made up the story about the gun and the fight on Florence Avenue because I wanted to do whatever I could do to get the police and Williams off my back and I thought it would be funny to send the cops on a 'dead lead.' I told them there was a fight and that I threw the gun in the bushes and that I later heard that Miller had picked up the gun." *Miller v. District Attorney for the County of Philadelphia*, 12-742, 2019 WL 2869641, at *9 (E.D. Pa. June 12, 2019).

read into the record components of Williams' initial statement. *Id.* ¶ 98. A jury considered the evidence and found Plaintiff guilty of all charges. *Id.* ¶ 105. Several years later, in 2003, David Williams confessed to the commission of the murder, but, when he testified to this, the PCRA judge determined he was not credible. *Id.* ¶¶ 108-113. After having so testified, Williams pled guilty to perjury. *Id.* ¶ 114.

Years later, during federal litigation of Plaintiff's petition for writ of habeas corpus, Judge Henry Perkins found that the failure to turn over information bearing on the credibility of Williams, notably the fact that Manigault could not have been at the murder scene and Jack Williams did not relay the information about his murder of Paul Jones as described, constituted *Brady* violations warranting vacatur of the conviction and a new trial. Compl. ¶ 124; *see also, generally Williams*, 2019 WL 2869641. Upon review of the file, the Conviction Integrity Unit determined that it did not find David Williams to be a credible witness, and so filed a motion to dismiss the charges in the Philadelphia Court of Common Pleas. *Id.* ¶¶ 128-133.

In his six-count Complaint, Plaintiff seeks to hold Detectives Piree, Coogan, Bova, Bell and Sharkey liable for:

- Withholding, suppression, and concealment of exculpatory evidence under the Fourteenth Amendment (Count 1);

- Fabrication of evidence under the Fourteenth Amendment (Count 2);

- Malicious prosecution under the Fourth and/or Fourteenth Amendments (Count 3);

- Equal protection violations under the Fourteenth Amendment (Count 4); and

- Malicious prosecution under state law (Count 6).

Plaintiff also alleges, in Count 5, that the City of Philadelphia is liable for the alleged constitutional harms because the City, with deliberate indifference, enacted either a policy,

6

practice or custom, or failed to train the detectives, and that enaction or failure was the moving force behind the alleged constitutional violations. Defendants now move for partial dismissal.

## II. Standard of Review

To survive a motion to dismiss pursuant to 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's claims are "plausible" if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint must present factual allegations that are "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a court must accept the allegations in the complaint and all reasonable inferences that can be drawn from them as true and view them in the light most favorable to the plaintiff for purposes of a Rule 12(b)(6) motion, it "need not credit a complaint's bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

## III. Argument

In summary form, Plaintiff was identified as a murderer by an individual who claimed to have learned from Plaintiff of his commission of that crime. Plaintiff contends he never should have been arrested for that murder because of known issues with the credibility of the individual who identified him as a murderer. He further contends that had the Defendants turned over information bearing on the credibility of this source, he never would have been convicted.

Notwithstanding his detailed factual allegations, Plaintiff fails to establish some of his claims, and portions of others fail as a matter of law. As to the former, Plaintiff fails to establish his fabrication of evidence and equal protection claims as to any Defendant. As to the latter,

Plaintiff cannot pursue his withholding of evidence or his malicious prosecution procedural due process claim against any of the defendant detectives because those rights were not clearly established at the time of the investigation and conviction, and the individual defendants are thus entitled to qualified immunity. Turning to his claims against the City, many of those fail for the same reasons.

### A. *Plaintiff's Fabrication of Evidence and Equal Protection Claims Should be Dismissed for Failure to State a Claim*

Plaintiff does not allege sufficient facts to support Counts 2 and 4 of his Complaint, his fabrication of evidence and equal protection claims. These failures are discussed in turn.

In Count 2, Plaintiff brings a fabrication of evidence claim against each Detective. Such a claim requires that officers offer testimony or evidence that they knew was false but offered the evidence in bad faith, and that the fabricated evidence was "so significant that it could have affected the outcome of the criminal case." *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014); *see also Black v. Montgomery County*, 835 F.3d 358, 368-72 (3d Cir. 2016).

The fabrication claims that proceed through discovery are supported by facts markedly different than those alleged by Plaintiff here. *See Halsey*, 750 F.3d 273; *see also Thorpe v. City of Philadelphia*, No. 19-5094, 2020 WL 5217396, at *4 (E.D. Pa. Sept. 1, 2020); *Pyle v. State of Kansas*, 317 U.S. 213, 214 (1942). In *Halsey*, the defendants were alleged to have fabricated the plaintiff's confession to the crime of which he was convicted and to have coerced him to sign the false confession. *Halsey*, 750 F.3d at 278. Plaintiff, a young man with limited education and some mental limitations, was subjected to three rounds of questioning by Plainfield, N.J. detectives, during each of which he waived his *Miranda* rights. *Id.* at 279-83. By the third round of questioning, the detective escalated his questioning, insisting that the plaintiff was the perpetrator of two brutal murders. *Id.* at 284. Though he signed the statement that resulted from

this intensified interrogation, the plaintiff maintained he had never said the words reduced to that writing. *Id.* Similarly, in *Thorpe*, the plaintiff alleged that the defendants were specifically responsible for the creation of false statements that were used to initiate and prosecute the criminal charges against him. 2020 WL 5217396 at *4. Even in *Pyle*, the Supreme Court case on which recent discussions of fabrication of evidence claims rely, the habeas petitioner alleged that the false statements used against him were the result of threats and coercion by law enforcement, done for the purpose of eliciting false information. 317 U.S. at 214.

Looking beyond Third Circuit and Supreme Court authority, the *Halsey* Court cited the Second Circuit opinion in *Ricciuti v. New York City Transit Auth.* in its explanation of the existence of a standalone claim for fabrication of evidence. In *Ricciuti*, the Second Circuit expressly stated that "when a police officer *creates* false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (emphasis added).

Placed amidst this legal landscape, Plaintiff's allegations do not rise to the level of stating a fabrication of evidence claim against the Detectives. Notably, there is no allegation that the Detectives created and knowingly submitted false evidence. In *Halsey*, the defendant was present for and drafted a false confession. In *Thorpe*, at least one defendant purportedly forced the creation of a false witness statement. Here, Plaintiff's allegations, at their core, intimate that the investigating Detectives should have known that the individual identifying Plaintiff as a murderer did not merit belief because portions of what he said were demonstrably untrue. These allegations do not rise to the level of those sufficient to make out a claim contemplated by the

Third Circuit Court of Appeals in *Halsey* and *Black*, and Plaintiff's claim should be dismissed. *E.g.*, *Boseman v. Upper Providence Twp.*, 680 F. App'x 65, 69-70 (3d Cir. 2017) (affirming dismissal of fabrication of evidence claim because plaintiff alleged contents of arrest report were disputed).

In Count 4, in turn, Plaintiff brings an Equal Protection claim against all Defendants. The Fourteenth Amendment to the United States Constitution prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." To state a claim for violation of this right, "general accusations and the invocation of the Equal Protection Clause are not enough." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Instead, a plaintiff must allege sufficient facts to establish that the actions of each of the defendants "(1) had a discriminatory effect, and (2) were motivated by a discriminatory purpose." *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002) (citations omitted). Establishing the element of discriminatory effect requires pleading sufficient facts to "show that [plaintiff] is a member of a protected class and that [he] was treated differently from similarly situated individuals in an unprotected class." *Id.* at 206 (citations omitted). Applying these principles in the context of a motion to dismiss, the Court in *Tucker v. City of Philadelphia* found that plaintiff's bare recitals of racial animus were insufficient to state an equal protection claim. No. 16-3104, 2017 WL 5010032, at *2-3 (E.D. Pa. Nov. 2, 2017).

Plaintiff's allegation with regard to his equal protection claim against the individual detectives is sparse and conclusory. He states, in toto, with regard to the individual defendants that "the defendant detectives violated Mr. Miller's right to equal protection of the law by intentionally and unlawfully prosecuting him with racial animus and bias against him as a Black man." Compl. ¶ 141. He does not allege any facts that show differential treatment by each

10

individual detective and does not allege any facts that show discriminatory motivation by any of the Defendants. Instead, his pleading relies upon the general invocation of the right that the *Phillips* court cautioned against. Absent any factual allegations to substantiate his claim against each individual, Plaintiff's equal protection claim against each Detective should be dismissed. *Tucker*, 2017 WL 5010032, at *2-3.

### B. Plaintiff's Withholding of Evidence and Fourteenth Amendment Malicious Prosecution Claims Should be Dismissed Because the Defendants are Entitled to Qualified Immunity

Several of the claims that Plaintiff seeks to pursue implicate rights that were not clearly established at the time of the investigation into the murder of Anthony Mullen and Plaintiff's subsequent prosecution for that murder. Count 1 of the Complaint is an omnibus claim for "withholding, suppression, and concealment of exculpatory evidence" that "violated [Plaintiff's] right to due process of law under the Fourteenth Amendment to the U.S. Constitution." Compl. ¶ 163. Though alleged together, two separate claims are contained within this count: one for withholding of evidence (a *Brady* violation) and a second for suppression or concealment of evidence. Plaintiff also, in Count 3, alleges that he was subjected to malicious prosecution, in violation of the Fourteenth Amendment. Because neither of these rights was clearly established in 1997 or 1998, the Detectives are entitled to qualified immunity and dismissal of these claims.

Qualified immunity shields public officials from liability unless it is "beyond debate" that the federal right they allegedly violated was "clearly established at the time of the challenged conduct." *See George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) (internal quotations omitted). A right only qualifies as clearly established if its "contours . . . are sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *See Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations and quotations omitted) (emphasis

11

added). Moreover, a right must be clearly established "in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). District courts must give serious consideration to qualified immunity arguments made in motions to dismiss, because qualified immunity provides defendants "an entitlement not to . . . face the . . . burdens of litigation." *See Rehiel*, 738 F.3d at 571. "Accordingly, any claim of qualified immunity must be resolved at the earliest possible stage of the litigation." *Id.* (internal quotations omitted) (reversing district court's denial of a motion to dismiss based on qualified immunity after the district court stated that such immunity "may be clarified by discovery").

Specifically as to the "withholding of evidence" claim sounding in *Brady* obligations, at the time of the investigation and prosecution underlying this case, this Court has already found that "the state of the law regarding the *Brady* obligations of police officers" "was not so clearly established that every reasonable official would have understood that what he was doing violated that obligation[.]" *Lewis v. City of Philadelphia*, No. 19-2847, 2020 WL 1683451, at *10 (E.D. Pa. Apr. 6, 2020). Indeed, the attachment of *Brady* obligations to police officers and the potential for liability as a result of failure to comply was not clearly established until this Third Circuit Court of Appeals' decision in *Gibson v. Superintendent of New Jersey Dep't of Law & Public Safety – Division of Police*. 411 F.3d 427, 443 (3d Cir. 2005). Because that right was not clearly established until six years after the investigation and prosecution out of which Plaintiff's claim arises, the Detectives are entitled to qualified immunity and this claim should be dismissed. *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 384-86 (E.D. Pa. 2018); *Gilyard v. Dusak*, No. 16-2986, 2018 WL 2144183, at *4-5 (E.D. Pa. May 8, 2018).

In turn, this Court has recognized several times that whether or not a procedural due process right against malicious prosecution exists remains an unsettled area of law. *Thomas*, 290

F. Supp. 3d at 380-82. Consistent with the requirement that entitlement to qualified immunity is predicated upon the clear notice that conduct will violate a particular constitutional right, the lack of a clear statement of law by the Third Circuit Court of Appeals regarding whether a malicious prosecution claim can be grounded in the Fourteenth Amendment means that the Detectives are entitled to qualified immunity on this claim, and it should be dismissed. *Id.*; *Lewis*, 2020 WL 1683451, at *5-8 (collecting cases within the Circuit that conclude there is no clearly established procedural due process right against malicious prosecution).

### C. Plaintiff Fails to Establish Part of his <u>Monell</u> Claim Against the City

In Count 5 of his Complaint, Plaintiff baldly alleges that the City of Philadelphia is responsible for all of the alleged constitutional violations by its employees. Compl. ¶ 167. While this is stated as one Count, it implicates all the theories of liability expressed in Counts 1-4. However, properly considered as being comprised of several claims of municipal liability, Plaintiff cannot pursue many of his claims against the City for several reasons. First, Plaintiff cannot sue the City for violations of rights that were not clearly established at the time of the events at issue. Second, Plaintiff cannot pursue a claim against the City where the underlying actions do not make out the violation of a constitutional right. Practically speaking, and as explicated below, this means that Plaintiff's *Monell* claims for withholding of evidence (via Count 1), fabrication of evidence (via Count 2), Fourteenth Amendment malicious prosecution (via Count 3), and equal protection (via Count 4) should be dismissed.

#### 1. The Court Should Dismiss Plaintiff's Fourteenth Amendment Malicious Prosecution and Withholding of Evidence Claims Against the City

Plaintiff cannot sue the City for violations of constitutional rights that were not clearly established at the time of the alleged harm. Since Plaintiff does not contend that the City itself facially violated federal law, his federal claims against the City cannot proceed unless he pleads

13

deliberate indifference on the part of the City. *See Kelly v. Borough of Carlisle*, 622 F.3d 248, 264 (3d Cir. 2010). Deliberate indifference "is a *stringent* standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations and quotations omitted) (emphasis added); *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001) (noting that it is "difficult" for a plaintiff to establish deliberate indifference).

In *Szabla v. City of Brooklyn Park*, 486 F.3d 385 (8th Cir. 2007), a police officer commanded his canine to bite and hold a suspect without first giving the suspect a warning. *Id.* at 388. The district court "concluded that [the officer] had used excessive force . . . by commanding [his dog] to . . . bite and hold, without first providing a warning." *Id.* at 388-389. However, the court held that the officer "was protected by qualified immunity, because the right to a warning was not clearly established at the time of the incident." *Id.* at 389.

On appeal, the Eighth Circuit, sitting en banc, held that the municipality which employed the officer could not be sued under § 1983. *Id.* at 388. The court noted that the Fourth Amendment right in question was not clearly established at the time of the incident, and then stated: "[W]e agree with the Second Circuit and several district courts that a [municipality] cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established." *Id.* at 393 (citing several cases). The Eighth Circuit reasoned that a municipality "cannot properly be said to have exhibited . . . *deliberate* indifference to constitutional rights that were not clearly established." *Id.* at 394. The Sixth Circuit recently reached this same conclusion in dismissing the municipal liability claim in *Arrington-Bey v. City of Bedford Heights*. 858 F.3d 988, 995 (6th Cir. 2017) (holding a municipality could not be liable because the plaintiff's constitutional rights were not clearly

14

established at the time of the underlying incident); *see also Bustillos v. El Paso County Hospital District*, 891 F.3d 214, 222 (5th Cir. 2018) (holding same).

Consistent with the appellate courts in *Szabla, Bustillos,* and *Arrington-Bey*, this Court should dismiss the Fourteenth Amendment malicious prosecution claim brought against the City in Count 3 of Plaintiff's Complaint. As stated above, the law regarding the Fourteenth Amendment and malicious prosecution was not clearly established at the time of Plaintiff's arrest and conviction. Given the murky state of the law, Plaintiff cannot allege or establish that the City exhibited deliberate indifference towards his purported Fourteenth Amendment right to be free of malicious prosecution, for a municipality "cannot properly be said to have exhibited . . . *deliberate* indifference to constitutional rights that were not clearly established" in the first place. *Szabla*, 486 F.3d at 394 (emphasis in original). Therefore, Plaintiff's Fourteenth Amendment malicious prosecution claim against the City fails as a matter of law. *See Thomas*, 290 F. Supp. 3d at 387 (following *Szabala* and holding that "[b]ecause the rights at issue in the claims for Fourteenth Amendment malicious prosecution . . . were not clearly established . . . the Court dismisses the *Monell* count as to these claims").

The same result, dismissal of the *Monell* claim, is warranted for Plaintiff's withholding of evidence claim. As detailed above, that claim was not clearly established as applying to police officers in the Third Circuit until 2005. Just as the City could not be deliberately indifferent to a Fourteenth Amendment right that was not clearly established, so too it cannot have been deliberately indifferent to a *Brady* obligation that was not clearly established at the time of the operative events. *Lewis*, 2020 WL 1683451, at *12-13 (dismissing claims against the City for withholding of evidence and Fourteenth Amendment malicious prosecution because those rights

15

were not clearly established at the time of the investigation, arrest, and prosecution at issue in the case). These claims should be dismissed.

### 2. *The Court Should Dismiss Plaintiff's Fabrication of Evidence and Equal Protection Claims Against the City*

To maintain a claim of municipal liability pursuant to *Monell*, a plaintiff must first establish that he or she experienced constitutional injury. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1149-50 (3d Cir. 1995). As the Third Circuit Court of Appeals has stated, "had there not been an underlying constitutional violation in the first instance, plaintiff's [municipal liability] claim against the city would not stand." *Kneipp v. Tedder*, 95 F.3d 1199, 1212 n.29 (3d Cir. 1995). As argued above, Plaintiff has failed to state either a fabrication of evidence claim or an equal protection claim. In the absence of establishing those alleged constitutional harms, Plaintiff cannot maintain his municipal liability claim predicated upon those theories. Consequently, these claims against the City of Philadelphia should be dismissed. *E.g. Dimitri v. City of Philadelphia*, No. 19-01329, 2019 WL 5212357, at *3-4 (E.D. Pa. Oct. 15, 2019) (dismissing *Monell* claims because plaintiff did not allege a constitutional violation).

## IV. Conclusion

For the reasons stated above, Defendants respectfully submit that the Court should dismiss Plaintiff's fabrication of evidence and equal protection claims, Counts 2 and 4, for failure to state a claim. The Court should also dismiss the withholding of evidence claim in Count 1 and the Fourteenth Amendment malicious prosecution claim in Count 3 because those rights were not clearly established at the time of the events underlying this case, and the Defendants are thus entitled to qualified immunity. Finally, the Court should dismiss these claims against the City of Philadelphia. The remaining claims are thus a Fourteenth Amendment claim for suppression/concealment of exculpatory evidence, a Fourth Amendment claim for

16

malicious prosecution, and a claim that the City of Philadelphia is responsible for these alleged constitutional harms, the moving force for which was the City's policies, practices or customs and/or failures to train or discipline officers.

Date: October 22, 2020				Respectfully submitted,

								/s/ *Anne B. Taylor*
								Anne B. Taylor
								Chief Deputy City Solicitor
								Pa. Attorney ID No. 206057
								City of Philadelphia Law Department
								1515 Arch Street, 14th Floor
								Philadelphia, PA 19102
								215-683-5381 (phone)
								215-683-5397 (fax)
								anne.taylor@phila.gov

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN L. MILLER, III,** | : |
| | : |
| | : CIVIL ACTION |
| **Plaintiff,** | : No. 2:20-cv-3054 |
| | : |
| v. | : |
| | : |
| **CITY OF PHILADELPHIA, et al.,** | : |
| | : |
| **Defendants** | : |
| | : |

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, Defendants City of Philadelphia, Jeffrey Piree, William Coogan, Richard Bova, John Bell, and Michael Sharkey's Partial Motion to Dismiss, Memorandum of Law in support thereof, Proposed Form of Order, and this Certificate of Service were filed via the Court's electronic filing system and are available for downloading.

Date: October 22, 2020              Respectfully submitted,

                                    /s/ *Anne B. Taylor*
                                    Anne B. Taylor
                                    Chief Deputy City Solicitor
                                    Pa. Attorney ID No. 206057
                                    City of Philadelphia Law Department
                                    1515 Arch Street, 14th Floor
                                    Philadelphia, PA 19102
                                    215-683-5381 (phone)
                                    215-683-5397 (fax)
                                    anne.taylor@phila.gov